UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| HOMERO RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11-cv-00294-JAW |
| | ) | |
| AUSTIN J. DECOSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT, DEFENDANT RADLO BROTHERS, INC.'S
RULE 12(B)(6) MOTION TO DISMISS, PLAINTIFF'S MOTION FOR LEAVE
TO FILE AMENDED CAPTION, DEFENDANTS' PARTIAL MOTION
TO DISMISS, AND PLAINTIFF'S MOTION TO STRIKE EXHIBITS
ATTACHED TO PARTIAL MOTION TO DISMISS**

The Court resolves a number of preliminary issues in this employment-based case, granting the Plaintiff's motion to amend his Complaint and to file an amended caption, granting in part and denying in part his motion to strike attachments to the Defendants' motion to dismiss, and denying the Defendants' motions to dismiss the Complaint.

## I.    BACKGROUND AND PARTIES' POSITIONS

Despite its nascent stage, the filings in this case are already voluminous with a total of five motions currently before the Court.

### A.    Motion for Leave to File Second Amended Complaint

On August 1, 2011, Homero Ramirez filed a thirteen-count complaint against Austin J. DeCoster, Maine Ag, LLC, DeCoster, LLC, Quality Egg of New England,

LLC, Maine Contract Farming, LLC, Turner Maintenance and Services, Inc., Dorothy Egg Farms, Inc., Dorothy Egg Farms, LLC, Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., Co-Hen Hatchery Inc., Radlo Brothers, Inc., and Mountain Hollow Farms, LLC, alleging employment discrimination in violation of state and federal law on the basis of race and national origin, age discrimination, disability discrimination, retaliation, and related violations of state and federal medical leave acts. *Compl.* (ECF No. 1). On August 16, 2011, Mr. Ramirez filed an amended complaint dropping Quality Egg of New England, LLC and Turner Maintenance and Services, Inc. as Defendants, but alleging the same thirteen counts.[1] *First Am. Compl.* (ECF No. 4).[2]

On October 28, 2011, Mr. Ramirez moved for leave to file a second amended complaint. *Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 31) (*Pl.'s Second Am. Compl. Mot.*). The Second Amended Complaint seeks to modify the First Amended Complaint to: (1) clarify that Austin J. DeCoster is Mr. Ramirez's employer for purposes of Title VII liability and is not named in his individual capacity, (2) add as a defendant Radlo Foods, LLC (Radlo Foods), a related entity to Radlo Brothers, Inc. (Radlo Brothers), (3) include new allegations regarding the Defendants' integrated enterprise to include entities in Iowa, Nebraska, Ohio, and Maryland and to add allegations that Mr. Ramirez assisted the Defendants in obtaining Mexican laborers and making living arrangements for those workers for

---

[1] The First Amended Complaint lists and describes thirteen distinct counts but numbers the final two both "Count XII," an error the Second Amended Complaint corrects. For ease of reference, the Court refers to the second "Count XII" as Count XIII."

[2] The Plaintiff filed this First Amended Complaint as a matter of course. FED. R. CIV. P. 15(a)(1).

many, if not all, of these out-of-state entities, and (4) fix a clerical error by renumbering the second "Count XII" as Count XIII. *Pl.'s Second Am. Compl. Mot.* Ex. A, *Second Am. Compl.* Mr. Ramirez asserts that his request to amend the First Amended Complaint is timely because no Scheduling Order has yet issued. *Pl.'s Second Am. Compl. Mot.* at 1. Mr. Ramirez also asserts that amendment should be allowed because granting the amendment will not cause delay or prejudice to the Defendants. *Id.*

### 1.    Radlo Foods, LLC

On November 17, 2011, Radlo Foods objected to Mr. Ramirez's motion for leave to file his second amended complaint. *Obj. of Radlo Foods, LLC, to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 38) (*Radlo Foods Obj.*). Radlo Foods argues that the Court must deny the motion to the extent it seeks to add Radlo Foods as a defendant because Mr. Ramirez's proposed cause of action against Radlo Foods is futile. *Id.* at 2.

More precisely, Radlo Foods contends that the "only allegation specific to [Radlo] Foods is that it is a Massachusetts limited liability company with a principal place of business in Turner, Maine." *Id.* at 4. Other than this specific allegation, Radlo Foods maintains that the Second Amended Complaint has "lumped in" Radlo Foods with other defendants as part of an allegedly integrated enterprise under common ownership, management and control when, in fact, it is an independent, family-owned business, which only purchases eggs at arm's length from some of the other defendants in this case. *Id.* at 4-5.

3

In support, Radlo Foods filed an affidavit of Paul Gisbourne, the Controller for Radlo Foods, LLC. *Id.* Attach. 1, *Decl. of Paul Gisbourne* (*Gisbourne Decl.*). In his declaration, Mr. Gisbourne states that Radlo Foods, LLC is a Massachusetts limited liability corporation that is wholly and independently owned by the Radlo family, which is not controlled by nor has any relation to Mr. DeCoster or any other entity named in the Second Amended Complaint. *Gisbourne Decl.* ¶¶ 2-4. Mr. Gisbourne further states that Radlo Foods has never directly or indirectly employed Mr. Ramirez in any capacity. *Gisbourne Decl.* ¶ 11. Radlo Foods cites *Gagliano-McFarland v. Giri Community Drive LLC*, No. 10-cv-490-GZS, 2011 U.S. Dist. LEXIS 53026 (D. Me. May 16, 2011) and other case law for the proposition that under the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Mr. Ramirez has failed to state a claim against Radlo Foods that is plausible on its face. *Id.*

Mr. Ramirez replied to Radlo Foods's objection on November 30, 2011. *Pl.'s Reply to Def. Radlo Foods, LLC's Obj. to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 42) (*Pl.'s Radlo Foods Reply*). Mr. Ramirez argues that Radlo Foods improperly responded to his motion to amend by addressing the underlying allegations within the second amended complaint, and that it failed to demonstrate that the amendment should not be allowed. *Id.* at 1-2. Mr. Ramirez further argues that his proposed amendments as to Radlo Foods should be granted under the default "'liberal' amendment policy" of Rule 15(a) because Radlo Foods has yet to file a responsive pleading. *Id.* at 3. Mr. Ramirez contends that the cases cited by Radlo Foods actually support his amendment to add Radlo Foods under an

4

integrated enterprise theory. *Id.* at 4-5. Finally, Mr. Ramirez asserts that the Court should not, at this stage, rely on the declaration of Paul Gisbourne because the standard for deciding a motion to amend the pleadings does not depend on the truth of the allegations but whether, if true, they are sufficient to state a cause of action. *Id.* at 7.

### 2.   Radlo Brothers, Inc.

Radlo Brothers, Inc. also filed an objection on November 17, 2011. *Obj. of Def. Radlo Brothers, Inc. to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 40) (*Radlo Brothers Obj.*). In its objection, Radlo Brothers states that it opposes the motion for the same reasons presented by Radlo Foods. *Id.* at 1. Radlo Brothers also states that "[o]therwise, Radlo Brothers, Inc., takes no position with respect to the Motion and continues to take the position that Radlo Brothers should be dismissed from this case for the reasons stated" in its pending motion to dismiss. *Id.* at 1.

Mr. Ramirez replied to Radlo Brothers' objection on November 30, 2011, *Pl.'s Reply to Def. Radlo Brothers, Inc.'s Obj. to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 42) (*Pl.'s Radlo Brothers Reply*), arguing that because Radlo Brothers "[t]akes no position" as to the motion it does not actually object to the motion to amend. *Id.* Mr. Ramirez incorporates its response to Radlo Foods's objection to the motion. *Id.*

### 3.    The Remaining Defendants

On November 18, 2011, the remaining Defendants objected to the motion for leave to file a second amended complaint.  *Defs.' Obj. to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 41) (*Defs.' Obj.*).  These Defendants argue that the amendment should not be allowed because the Second Amended Complaint fails to cure flaws that render the amendment futile because the Complaint would still fail to state a claim upon which relief could be granted.  *Id.* at 2.

In support of the claim that amendment is futile, the Defendants claim that Mr. DeCoster cannot be sued in his individual capacity under Title VII and cannot be an "employer" as defined by law.  *Id.* at 2-3.  They also argue that Mr. Ramirez's claim that he was, in good faith, previously unaware of the existence of Radlo Foods undercuts his allegations that any Radlo entity was ever his employer for purposes of his employment discrimination claims and renders any claims against Radlo Foods futile.  *Id.* at 3.  These Defendants further assert that while Mr. Ramirez now seeks to add entities from Maryland, Ohio, and Iowa under an integrated enterprise theory, he does not name them in the caption of the Second Amended Complaint and "fails to allege proper jurisdiction or venue" as to any out-of-state entities.  *Id.* at 6.  Pointing out that the Plaintiff bears the burden of establishing jurisdiction over each proposed Defendant, these Defendants argue that Mr. Ramirez has failed to allege sufficient facts to establish general and specific *in personam* jurisdiction over the out-of-state entities.  *Id.* at 7-14.  They also argue that Maine is not the proper venue for an action against any of the out-of-state entities.  *Id.* at 14-16.

Mr. Ramirez replied to these objections on December 2, 2011.  *Pl.'s Reply to Defs.' Obj. to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 45) (*Pl.'s Reply to Defs.' Obj.*).   First, in response to their objections over his naming Mr. DeCoster as a defendant for purposes of his employment discrimination claims, Mr. Ramirez states that the language of Title VII explicitly defines employer as a "person," citing 42 U.S.C. § 2000e(b), and argues that Mr. DeCoster independently meets the Act's definition of "employer."  *Id.* at 1, 2-3.  He further argues that an employee's allegation that an entity or individual is his employer is sufficient to survive a motion to dismiss.  *Id.* at 3.

As to their objections regarding the out-of-state entities, Mr. Ramirez claims that the discussion is irrelevant because he has not named those entities as Defendants; he states that he references the affiliated entities to support his allegation that the affiliated companies constitute a "single employer" for purposes of the Title VII damages cap.  *Id.* at 1-2, 4.

**B.    Radlo Brothers, Inc.'s Motion to Dismiss and Plaintiff's Motion for Leave to File Amended Caption**

On October 26, 2011, Radlo Brothers filed a motion to dismiss on the basis that Mr. Ramirez lacked personal jurisdiction over it.  *Rule 12(b)(2) Mot. to Dismiss* (ECF No. 29) (*Radlo Brothers' Mot. to Dismiss*).  Because no corporate entity named "Radlo Brothers" exists or has ever existed, Radlo Brothers asserts that Mr. Ramirez has failed to make the requisite showing of personal jurisdiction over the entity.  *Id.* at 1-2.

Mr. Ramirez objected on November 7, 2011, *Pl.'s Opp'n to Mot. to Dismiss of Def. Radlo Brothers, Inc.* (ECF No. 34) (*Pl.'s Opp'n to Radlo Brothers' Mot. to Dismiss*), accompanied by a motion asking for leave to file an amended caption to name Radlo Bros., Inc. in place of Radlo Brothers. *Pl.'s Mot. for Leave to File Am. Caption* (ECF No. 33) (*Pl.'s Mot. to Am. Caption*). He argues that Radlo Brothers' motion to dismiss is rendered moot by his motion to amend the caption to name Radlo Bros. in its place, *Pl.'s Opp'n to Radlo Brothers' Mot. to Dismiss* at 1, which is the Massachusetts-based entity he intended to name. *Pl.'s Mot. to Am. Caption* at 1. Mr. Ramirez asserts that because the motion is timely as no scheduling orders have yet been filed in this case, because "Brothers" is the long form of the informal contraction "Bros.," and because service has been accepted by and two motions filed on behalf of Radlo Brothers, the amendment poses no risk of unfair surprise to potential-Defendant Radlo Bros. and should be allowed. *Pl.'s Opp'n to Radlo Brothers' Mot. to Dismiss* at 1; *Pl.'s Mot. to Am. Caption* at 2.

On November 16, 2011, Radlo Brothers replied to the opposition, *Reply* (ECF No. 36) (*Radlo Brothers' Reply*), and responded to the motion to amend the caption on behalf of "the Radlo-family owners of the trade name 'Radlo.'" *Resp. to Pl.'s Mot. for Leave to File Am. Caption* (ECF No. 37) (*Radlo's Caption Resp.*). In both filings, Radlo Brothers re-emphasize that no corporate entity Radlo Bros. exist. Although it concedes that there was once a Massachusetts corporation named Radlo Bros., Inc. qualified as a foreign business in Maine, Radlo Brothers says that that entity ceased to do business in Maine in 2004 and in 2007 it changed its name to XTB

8

Requisitions, Inc. (XTB). *Radlo's Reply* at 1; *Radlo's Caption Resp.* at 1. Radlo Brothers asserts that the Radlo family it is not now affiliated with XTB in any way, and that it has no knowledge of who now owns or controls XTB. *Radlo's Reply* at 2; *Radlo's Caption Resp.* at 1.

Mr. Ramirez replied to Radlo Brothers' opposition to his motion to amend the caption on November 30, 2011. *Pl.'s Reply to Def. Radlo Brothers, Inc.'s Resp. to Pl.'s Mot. to Am. Caption* (ECF No. 43) (*Pl.'s Caption Reply*). In his response, Mr. Ramirez argues that amendment of the caption to include Radlo Bros. should be allowed because Radlo Brothers admitted that, at least until 2007, an entity named Radlo Bros. did exist and it did not deny that it employed him. *Id.* at 1. Mr. Ramirez also argues that because Radlo Brothers' response "does not affirmatively state that it is an 'objection'" and is not "couched in the language of an 'objection,'" his motion to amend the caption to name Radlo Bros., Inc., should be granted. *Id.* at 1.

## C.   Defendants' Partial Motion to Dismiss and Plaintiff's Motion to Strike

On October 5, 2011, Defendants Austin J. DeCoster, Maine Ag, LLC, DeCoster, LLC, Maine Contract Farming, LLC, Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc. moved to dismiss the Complaint and, alternately, certain counts, accompanied by five exhibits. *Defs.' Partial Mot. to Dismiss* (ECF No. 21) (*Defs.' Mot. to Dismiss*). These Defendants argue that all thirteen counts should be dismissed against Mr. DeCoster, the Co-Hen Defendants, and those "not named in Plaintiff's sworn Maine

Human Rights Charge." *Id.* at 1. First, they argue that all claims must be dismissed against Mr. DeCoster for failure to state a claim because, as an individual, he cannot be an "employer" for purposes of the applicable federal statutes and because he was not alleged to be Mr. Ramirez's employer in the Maine Human Rights Commission (MHRC) Charge (the Charge), a prerequisite to bringing this suit. *Id.* at 7-9. Second, the Defendants argue that all four of the "Co-Hen Defendants"—Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc.—no longer exist, cannot be liable to Mr. Ramirez, and therefore should be dismissed from the suit. *Id.* at 9-10. Third, the Defendants argue that Mr. Ramirez failed to name all but Quality Egg of New England and "DeCoster Egg Farm" as Defendants on the Charge submitted to the MHRC and, therefore, that all claims against all other Defendants should be dismissed for failure to state a claim. *Id.* at 10-13. Fourth, the Defendants argue that Counts IX, X, XI, XII, and XIII and all damages claims regarding lost wages, lost fringe benefits, and personal injuries must be dismissed under the Maine Workers' Compensation Act's exclusivity, immunity, and exemption provisions because, as an employer who secured workers' compensation insurance for its employees, Maine Ag, LLC is immune from private civil suit for injuries alleged to have occurred in the workplace. *Id.* at 13-18. Fifth and finally, the Defendants argue that Counts IX, X, XI, XII, and XIII must be dismissed for failure to state a claim because Mr. Ramirez has never formally requested specific reasonable

accommodation nor medical leave as required under the applicable state and federal medical leave acts.  *Id.* at 13-18.

Mr. Ramirez opposed the motion to dismiss on October 24, 2011.  *Pl.'s Opp'n to Partial Mot. to Dismiss* (ECF No. 28) (*Pl.'s Opp'n to Mot. to Dismiss*).  In addition, Mr. Ramirez moved to strike the exhibits attached to the Defendants' motion to dismiss.  *Pl.'s Mot. to Strike Exs. Attached to Partial Mot. to Dismiss of Defs.* (ECF No. 27) (*Pl.'s Mot. to Strike*).  In his motion to strike, Mr. Ramirez argues that the exhibits attached to the Defendants' motion may not be considered at this stage because they do not fall under one of the narrow exceptions to the general rule that a court may not look beyond the pleadings in deciding a Rule 12 motion.  *Pl.'s Mot. to Strike* at 1, 4-8; *Pl.'s Opp'n to Mot. to Dismiss* at 2.

The Defendants replied to Mr. Ramirez's opposition to their motion to dismiss on November 6, 2011, reiterating their original positions.  *Reply Mem. of Defs. to Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss* (ECF No. 32) (*Defs.' Mot. to Dismiss Reply*).  The Defendants opposed the motion to strike exhibits on November 14, 2011.  *Defs.' Obj. and Opp'n to Pl.'s Mot. to Strike Exs.* (ECF No. 35) (*Defs.' Opp'n to Mot. to Strike*).  In their opposition, the Defendants argue that the documents attached to their motion to dismiss are not properly the subject of a motion to strike under Rule 12(f) because the motion and its exhibits are not "pleadings" under the rule.  *Defs.' Opp'n to Mot. to Strike* at 1-2.  Furthermore, the Defendants argue that the exhibits are material and relevant to the defenses presented in their motion to dismiss.  *Defs.' Opp'n to Mot. to Strike* at 2-6.

## II.    DISCUSSION

### A.    Motion for Leave to File Second Amended Complaint

Rule 15(a) governs the amendment of pleadings, providing that leave to amend "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  A liberal interpretation of Rule 15(a) "reinforces one of the basic policies of the federal rules—that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits."  6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1473 (3d ed. 2010).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Abraham v. Woods Hole Oceanographic Institute*, 553 F.3d 114, 117 (1st Cir. 2009) (noting that leave should be granted "unless the amendment would be futile or reward undue delay"); *Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006); *Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167, 176 (D. Me. 2009)).

An amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Woods Hole*, 553 F.3d at 117.  "In assessing futility, the district court must apply the standard which applies to

12

motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)."  *Adorno v. Crowley Towing & Trans. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (citing *Glassman*, 90 F.3d at 623).

Here, Mr. Ramirez's second amended complaint should be allowed unless the following factors weigh against freely granting leave to amend:  (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility.  *Foman*, 371 U.S. at 182; *Glassman*, 90 F.3d at 622 ("[u]nless there appears to be an adequate reason for the denial of leave to amend (*e.g.*, undue delay, bad faith, dilatory motive, futility of amendment, prejudice), we will not affirm it").  First, this amendment is timely; no scheduling order has yet issued in this case and typically the scheduling order establishes a deadline for the amendment of pleadings.  Here, Mr. Ramirez has filed his motion to amend before the deadline for amended pleadings has been set.  Furthermore, although filed two months after the First Amended Complaint, Mr. Ramirez filed the motion for leave to amend only several weeks after the Defendants filed their motion to dismiss on October 5, 2011 and within days of Radlo Brothers' Motion to Dismiss; the Second Amended Complaint seeks to correct several issues raised in those motions.

Second, there is no suggestion of bad faith or dilatory motive on the part of Mr. Ramirez.  As the caption of this case shows, Mr. Ramirez alleges that he has worked for a great number of entities, all under the DeCoster umbrella.  The complexity of corporate entities can pose a substantial obstacle to plaintiffs seeking

13

to bring suit in state or federal court, and they may not always get it right the first time around.  Here, as information about the identity of named entities became clearer, Mr. Ramirez sought to amend his pleadings to name the correct entities and there is no indication he did so improperly.

The third and fourth factors—repeated failure to cure deficiencies by amendments previously allowed and undue prejudice—are not implicated here.

Finally, the Court is not persuaded that the claims contained in the proposed amended complaint are futile.  The Defendants' futility arguments fuse with the motion to dismiss standard.  *See Glassman,* 90 F.3d at 623 ("[i]n reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion"); *see also Gagliano-McFarland v. Giri Com'y Drive LLC,* No. 1:10-cv-490-GZS, 2011 U.S. Dist. LEXIS 53026, at *5 (D. Me. May 16, 2011). For reasons discussed in detail below, *infra* Part II.C, the Court concludes that the Second Amended Complaint does not fail to state a claim upon which relief could be granted and rejects the Defendants' argument that amendment would be futile.  As all of Mr. Ramirez's employment discrimination claims grow out of the same factual matrix and belong together for purposes of efficient administration, the motion for leave to file a second amended complaint is granted.

## B.   Radlo Brothers, Inc.'s Motion to Dismiss and Plaintiff's Motion for Leave to File Amended Caption

Radlo Brothers, Inc. moves the Court under Rule 12(b)(2) to dismiss it from this case for lack of personal jurisdiction because it does not exist.[3]  *Radlo Brothers' Mot. to Dismiss* at 1-2.  In its motion, Radlo Brothers noted that Mr. Ramirez had alleged in his First Amended Complaint that "Radlo Brothers, Inc. is a Maine corporation with a principal place of business in Turner, County of Androscoggin, State of Maine," *id.* at 2 (quoting *First Am. Compl.* ¶ 13), and attached to its motion a document from the Maine Secretary of State's Office indicating—according to Radlo Brothers—that "[t]here is (and has been) no Maine corporation named Radlo Brothers, Inc.," *id.*  In a footnote, Radlo Brothers concedes that before 2004, "a Massachusetts corporation named 'Radlo Bros., Inc.' was qualified to do business in Maine."  However, it asserts that "in 2004, Radlo Bros., Inc., sold all of its assets to Mountain Hollow Farms, LLC, ceased all of its operations, and went out of business."  *Id.* at 2 n.1.

---

[3]      In fact, although this motion to dismiss is signed by "Attorneys for Defendant Radlo Brothers, Inc.," *Radlo Brothers' Mot. to Dismiss* at 2, the reply states that the motion was filed "on behalf of the Radlo-family owners of the trade name "Radlo" . . . because the Radlo Family has an interest in preserving and fostering the goodwill of the Radlo family name." *Radlo Brothers' Reply* at 1.

Mr. Ramirez responded by moving to amend the caption to replace Radlo Brothers, Inc. with Radlo Bros., Inc. and by seeking leave to file a second amended complaint naming a related entity, Radlo Foods, LLC. *Pl.'s Opp'n to Radlo Brothers' Mot. to Dismiss* at 1; *see also Pl.'s Mot. to Am. Caption*; *Pl.'s Second Am. Compl. Mot.* Mr. Ramirez viewed the issue as simply being the difference between "Radlo Brothers, Inc." and "Radlo Bros., Inc." and suggested that by amending the caption to name Radlo Bros., Inc., he had effectively cured the problem. *Pl.'s Opp'n to Radlo Crothers' Mot. to Dismiss* at 1.

In its reply, Radlo Brothers emphasized that the point of its motion to dismiss was not whether Mr. Ramirez had misspelled "Brothers" or used an inappropriate abbreviation. *Radlo Brothers' Reply* at 2. Instead, Radlo Brothers explains that Mr. Ramirez has "attempted to sue an entity that does not exist, but which unfortunately contains the word 'Radlo'" and that the Radlo Family "has an interest in preserving and fostering the goodwill of the Radlo family name." *Id.* at 1-2. Radlo Brothers re-emphasizes that Radlo Bros., Inc. has not been authorized to do business in the state of Maine since 2004 and changed its name to XTB in 2007. *Id.* at 1. Furthermore, Radlo Brothers and the Radlo Family insist that they "do[] not own any interest in, and in no way control[], XTB (f/k/a Radlo Bros., Inc.)" and suggest that the new owner, XTB, may be the appropriate defendant. *Id.* at 2.

The same Rule 15(a) standards apply to Mr. Ramirez's motion to amend the caption as to his motion for leave to file his second amended complaint:  the amendment should be allowed absent undue delay, bad faith or dilatory motive,

repeated failure to cure deficiencies by previous amendments, undue prejudice, or futility. *See Foman*, 371 U.S. at 182. Again, because no scheduling order has been filed, the motion to amend does not pose the risk of undue delay, nor is there any indication of bad faith or dilatory motive.

As to the core argument, the Court is not inclined at this threshold stage to dismiss Radlo Bros., Inc. as a Defendant. The allegations in Mr. Ramirez's Second Amended Complaint extend back to at least 2004, before the point when Radlo Brothers admits it ceased doing business in the state of Maine and the Court cannot eliminate the possibility that a viable cause of action exists against Radlo Bros., Inc. based on its activities before its authority to do business in the state of Maine ceased. Furthermore, the mere fact that the Maine Secretary of State deemed Radlo Bros., Inc. unauthorized to do business in the state of Maine in 2004 does not necessarily mean that it actually ceased to do business in Maine at that point.

The same analysis applies to the impact of XTB's purchase of Radlo Bros., Inc. in 2007. The bare fact that XTB purchased Radlo Bros., Inc.'s assets in 2007 says very little about whether XTB is responsible for any discrimination Radlo Bros., Inc. committed before the asset sale. The terms of the asset sale are not before the Court. Furthermore, Radlo Bros., Inc.'s term "went out of business" is imprecise. *Radlo Brothers' Mot. to Dismiss* at 2 n.1 ("However, in 2004, Radlo Bros., Inc. sold all of its assets to Mountain Hollow Farms, LLC, ceased all its operations, and went out of business"). Under Maine law, even if Radlo Bros., Inc. was dissolved as a corporation, it would still be susceptible to suit. 13-C M.R.S. §

17

1406(2)(E) ("[d]issolution of a corporation does not . . . [p]revent commencement of a proceeding by or against the corporation in its corporate name").

With this said, the Court is dismissing this motion without prejudice, because it may well be that XTB is, as Radlo Brothers claims, the sole proper Defendant even for activities before its purchase.  Furthermore, the Court understands Radlo Bros., Inc.'s concern that it not be unnecessarily retained as a defendant in potentially expensive litigation.  Therefore, the Court has dismissed the motion without prejudice in order to allow Mr. Ramirez to undertake some focused discovery about Radlo Bros., Inc.'s continued viability as a Defendant.  The Court will allow the parties sixty days to exchange discovery on this issue.  Once the sixty day period has lapsed, the Court will allow Radlo Bros., Inc.—if it chooses to do so—to renew the motion.

## C.   Defendants' Motion to Dismiss and Plaintiff's Motion to Strike

In ruling on a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff."  *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).  To survive a motion to dismiss, a plaintiff must allege "sufficient facts to show that he has a plausible entitlement to relief."  *Sanchez*, 590 F.3d at 41 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  In other words, the complaint "must contain 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the claims," *Fantini v. Salem State College*, 557 F.3d 22,

18

26 (1st Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)) (internal punctuation omitted), and the factual allegations contained therein "must be enough to raise a right to relief above the speculative level," *Vazquez Vazquez v. Checkpoint Sys. of Puerto Rico, Inc.*, 609 F. Supp. 2d 217, 219 (D.P.R. 2009) (quoting *Twombly,* 550 U.S. at 555). Thus, a motion to dismiss should only be granted "if it 'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'" *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Const. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996)).

### 1.    Plaintiff's Motion to Strike Exhibits

In deciding a motion to dismiss under Rule 12(b)(6), the court "may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (citing *Garita Hotel, Ltd. P'ship v. Ponce Fed. Bank,* 958 F.2d 15, 18 (1st Cir. 1992)). However, a court may review certain documents, the authenticity of which is not challenged, "when a complaint's factual allegations are expressly linked to—and admittedly dependent upon—[those] document[s]"; when that happens, the documents "effectively merge[] into the pleadings and the trial court can review [them] in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Service*, 524 F.3d at 321 (quoting *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16-17 (1st Cir. 1998)) (internal punctuation omitted); *see*

19

*also Knowlton v. Shaw*, 708 F. Supp. 2d 69, 74 (D. Me. 2010). Specifically, a court may consider official public documents, documents central to a plaintiff's claims, and documents referred to in the complaint without deciding the motion under the summary judgment standard. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001); *see also, e.g., Trans-Spec Truck Service*, 524 F.3d at 321 ("if the district court chooses . . . to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion"). Where there exists "a genuine dispute" over the documents sought to be considered on a motion to dismiss, "the legal sufficiency of the cause of action is better tested in a motion for summary judgment." *Knowlton*, 708 F. Supp. 2d at 75 (citing *Rivera v. Centro Medico de Turabo, Inc.,* 575 F.3d 10, 15 (1st Cir. 2009)); *see also OfficeMax Inc. v. County Qwik Print, Inc.*, 802 F. Supp. 2d 271, 278 (D. Me. 2011) (holding that where extrinsic documents sought to be considered on a motion to dismiss present only "part, but not the whole picture," "[t]he more prudent course is to allow the parties to engage in discovery and revisit the legal issue based on a more fully developed record").

Accompanying their motion to dismiss, the Defendants filed five exhibits in 14 attachments constituting 30 documents and totaling 43 pages. *Defs.' Mot. to Dismiss* Attach. 1-8; *Additional Attachments* Attach. 1-4 (ECF No. 22) (*First Add'l*

*Attach.*); *Additional Attachments* Attach. 1-2 (ECF No. 23) (*Second Add'l Attach.*).

These attachments include:

(1)     Exhibit A-1:  MHRC Charge of Discrimination filed by Homero Ramirez, *Defs.' Mot. to Dismiss* Attach 1;

(2)     Exhibit A-2:  Letter dated December 29, 2010 to the Maine Human Rights Commission by N. Quinn Collins, Esq. transmitting the Charge of Discrimination, *Defs.' Mot. to Dismiss* Attach 2;

(3)     Exhibit A-3:  Notice of Charge of Discrimination from the U.S. Equal Employment Opportunity Commission (EEOC) to Quality Egg of New England, *Defs.' Mot. to Dismiss* Attach 3;

(4)     Exhibit A-4:  Charge Transmittal from the EEOC to the MHRC, *Defs.' Mot. to Dismiss* Attach 4;

(5)     Exhibit A-5:  Letter dated February 10, 2011 from the MHRC to Quality Egg of New England notifying it of the filing of Mr. Ramirez's complaint against it and accompanying documents, *Defs.' Mot. to Dismiss* Attach 5;

(6)     Exhibit A-6:  Response dated April 19, 2011 of Maine Ag, LLC to the MHRC, *Defs.' Mot. to Dismiss* Attach 6;

(7)     Exhibit A-7:  Request for Right to Sue Letter from N. Quinn Collins, Esq. to MHRC dated June 29, 2011, *Defs.' Mot. to Dismiss* Attach 7;

(8)     Exhibit A-8:  Notice of Right to Sue from MHRC to Mr. Ramirez dated July 12, 2011, *Defs.' Mot. to Dismiss* Attach 8;

(9)     Exhibit B-1:  Information Summary from Maine Department of the Secretary of State Bureau of Corporations, Elections and Commissions website for CH Hatchery, Inc., *First Add'l Attach.*;

(10)    Exhibit B-2:  Information Summary from Maine Department of the Secretary of State Bureau of Corporations, Elections and Commissions website for Co-Hen Egg Farms, Inc., *First Add'l Attach.* Attach. 1;

(11)    Exhibit B-3:  Search Results from Maine Department of the Secretary of State Bureau of Corporations, Elections and Commissions website showing "0 entities for query: CO-HEN EGG FARMS, LLC," *First Add'l Attach.* Attach. 2;

(12)     Exhibit C:  Workers' Compensation Board Insurance Coverage
         Certification certifying insurance coverage for Maine Ag LLC, *First
         Add'l Attach.* Attach. 3;

(13)     Exhibit D-1:  Employer's First Report of Occupational Injury or
         Disease filed by Maine Ag LLC regarding Homero Ramirez dated
         October 14, 2010, *First Add'l Attach.* Attach. 4;

(14)     Exhibit D-2:  Workers' Compensation Board Record of Claims
         Resolution regarding Homero Ramirez dated July 19, 2011, *First Add'l
         Attach.* Attach. 4;

(15)     Exhibit D-3:  Notice of Controversy issued by Workers' Compensation
         Board to Homero Ramirez notifying him of Maine Ag, LLC's denial of
         benefits dated June 8, 2011, *First Add'l Attach.* Attach. 4;

(16)     Exhibit D-4:  Statement of Compensation Paid issued by Workers'
         Compensation Board to Homero Ramirez dated June 9, 2011, *First
         Add'l Attach.* Attach. 4;

(17)     Exhibit D-5:  Memorandum of Payment issued by Workers'
         Compensation Board regarding Homero Ramirez dated March 24,
         2011, *First Add'l Attach.* Attach. 4;

(18)     Exhibit D-6:  Certificate of Discontinuance or Reduction of
         Compensation issued by Workers' Compensation Board regarding
         Homero Ramirez dated February 24, 2011, *Second Add'l Attach.*;

(19)     Exhibit D-7:  Letter from Liberty Mutual to Workers' Compensation
         Board Hearing Officer requesting discontinuance of employee's
         benefits dated February 23, 2011, *Second Add'l Attach.*;

(20)     Exhibit D-8:  Workers' Compensation Board Record of Mediation dated
         January 6, 2011, *Second Add'l Attach.*;

(21)     Exhibit D-9:  Memorandum of Payment issued by Workers'
         Compensation Board regarding Homero Ramirez dated December 9,
         2010, *Second Add'l Attach.*;

(22)     Exhibit D-10:  Workers' Compensation Board Record of Mediation
         dated December 8, 2010, *Second Add'l Attach.*;

(23)     Exhibit D-11:  Workers' Compensation Board Record of Claims
         Resolution regarding Homero Ramirez dated October 26, 2010, *Second
         Add'l Attach.* Attach. 1;

(24)   Exhibit D-12:  Notice of Controversy issued by Workers' Compensation Board to Homero Ramirez notifying him of Maine Ag, LLC's denial of benefits dated October 10, 2010, *Second Add'l Attach.* Attach. 1;

(25)   Exhibit D-13:  Wage Statement form for Homero Ramirez prepared by Pat DeCoster on behalf of Maine Ag, LLC dated October 18, 2010, *Second Add'l Attach.* Attach. 1;

(26)   Exhibit D-14:  Untitled table beginning "Maine, Date of injury 10/06/10 . . . ." *Second Add'l Attach.* Attach. 1;

(27)   Exhibit D-15:  undated Wage Statement form for Homero Ramirez prepared by Pat DeCoster on behalf of Maine Ag, LLC, *Second Add'l Attach.* Attach. 1;

(28)   Exhibit D-16:  Schedule of Dependant(s) and Filing Status Statement prepared by Homero Ramirez for Workers' Compensation Board dated October 23, 2010, *Second Add'l Attach.* Attach. 2;

(29)   Exhibit E-1:  Letter from David J. Perkins, Esq. to the Personnel Department of Quality Egg of New England and DeCoster Egg Farm regarding Homero Ramirez dated October 28, 2010, *Second Add'l Attach.* Attach. 2; and

(30)   Exhibit E-2:  Letter from Kaylene Doloff, Human Resources, Maine Ag, LLC, responding to David J. Perkins, Esq. dated November 10, 2010, *Second Add'l Attach.* Attach. 2.

Although Mr. Ramirez does not challenge the authenticity of the attached exhibits, he moves to strike them on the ground that they may not be properly considered at the motion to dismiss stage.  *Pl.'s Mot. to Strike* at 1, 4-5.  In their opposition to Mr. Ramirez's request that the Court strike these exhibits, the Defendants argue that the motion itself is improper because Federal Rule of Civil Procedure 12(f) expressly applies to striking material from pleadings and not to a motion to dismiss.  *Defs.' Opp'n to Mot. to Strike* at 1-2.

Regarding the Defendants' Rule 12(f) argument, it is true that Rule 12(f) expressly provides that a court "may strike from a pleading an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  However, the fact that the Rules authorize the use of a motion to strike in one instance does not mean that they forbid its use for other purposes.  Here, where First Circuit precedent limits consideration of attached documents in a motion to dismiss to certain categories, a respondent is fully justified using a motion to strike as a vehicle to alert the Court that, in accordance with *Alternative Energy*, it objects to the Court's consideration of documents outside the approved categories.  The Court rejects the Defendants' contention that Mr. Ramirez's motion to strike is unauthorized.

As an aside, the Defendants' decision to load the motion to dismiss record with thirty attached documents is contrary to the spirit of the Rules.  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the allegations in the complaint, not an opportunity to file a motion for summary judgment before discovery.  As the First Circuit said in *Alternative Energy*, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy*, 267 F.3d at 33.  The exception for consideration of documents is "narrow." *Id.*  It is only when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)," that a court "can review it upon a motion to dismiss." *Id.* at 34 (internal punctuation omitted).

24

Due to the variety and complexity of documents attached by the Defendants, each is addressed and discussed in turn:

Exhibits A-1, A-2, and A-8:  The Second Amended Complaint references the Charge, the cover letter transmitting the Charge, and the MHRC's Right to Sue letter; the Right to Sue letter is attached as an exhibit.  *Second Am. Compl.* ¶¶ 71-72; *Compl.* Ex. A (ECF No. 1-1).  The Court has considered all three documents.  *See Trans-Spec Truck Service*, 524 F.3d at 321.

Exhibits A-3 through A-7:  These exhibits consist of documents from the EEOC and MHRC to Quality Egg of New England and "DeCoster Egg Farm," as well as correspondence regarding Mr. Ramirez's EEOC and MHRC complaints among the EEOC, MHRC, attorneys for Maine Ag, LLC, and counsel for Mr. Ramirez.  They are not certified public documents, are not referenced in the Complaint, and are not central to the claims in the Complaint.  Although the authenticity of the documents is not expressly challenged by Mr. Ramirez, they present, at best, an incomplete picture of proceedings before the EEOC and MHRC.  The Court has not considered Exhibits A-3 through A-7.

Exhibits B-1 through B-3:  These exhibits, which are printouts of online searches of documents at the Maine Secretary of State's Office, are not central to the Plaintiff's Complaint.  *See Alternative Energy*, 267 F.3d at 34.  Furthermore, although Mr. Ramirez does not challenge their authenticity, he points out that they present, at best, a limited view of the current status of these entities.  *Pl.'s Mot. to Strike* at 7.  After discovery, the Defendants may assert that these entities do not

25

exist, that claims against them are time-barred, or that they otherwise may not be held liable for the discrimination Mr. Ramirez alleges "on a more fully developed record." *OfficeMax*, 802 F. Supp. 2d at 278. However, the Court has not considered these exhibits in the motion to dismiss.

Exhibit C: Exhibit C is an Insurance Coverage Certification certified by the Executive Director of the Maine Workers' Compensation Board, confirming that Maine Ag, LLC maintained workers compensation coverage from August 27, 2009 through August 17, 2012. This document is an official public record. *See Alternative Energy*, 267 F.3d at 34. The Court has considered it in ruling on this motion to dismiss.

Exhibits D-1 through D-16: These exhibits pertain to proceedings before the Maine Workers' Compensation Board. Mr. Ramirez objects to their introduction here on the grounds that they are both immaterial and incomplete. The Defendants respond that the documents of the proceedings before the Workers' Compensation Board "demonstrate the employee's knowledge, in October, 2010, that his sole employer was the Defendant Maine Ag, LLC." *Defs.' Opp'n to Mot. to Strike* at 2. However, the fact that an employee receives workers' compensation benefits from one employer does not preclude the possibility that he was jointly employed by more than one.

The Court has not considered these documents at the motion to dismiss stage. First, Mr. Ramirez objects on the grounds of completeness. Second, the Defendants' proposed relevance for the documents is questionable. Third, the

documents are not necessary to reach the Defendants' overall contention that receipt of workers' compensation benefits prohibits a discrimination lawsuit. Finally, "[t]he more prudent course is to allow the parties to engage in discovery and revisit the legal issue based on a more fully developed record." *OfficeMax*, 802 F. Supp. 2d at 278; *Knowlton*, 708 F. Supp. 2d at 75.

Exhibits E-1 and E-2: Exhibit E-1 is a letter dated October 28, 2010 from Attorney David Perkins to Quality Egg of New England concerning Mr. Ramirez's sick leave; Exhibit E-2 is Quality Egg's written response. For the same reasons as Exhibits D-1 through D-16, the Court has not considered this correspondence in ruling on the motion to dismiss.

In conclusion, the Court "is wary of ruling prematurely when the allegations in the Complaint can reasonably be interpreted as raising factual questions" that are better considered at the summary judgment stage on a more fully developed record. *OfficeMax*, 802 F. Supp. 2d at 278; *see also Knowlton*, 708 F. Supp. 2d at 75-76.

## 2.     Defendants' Motion to Dismiss

### a.     Individual Liability of Mr. DeCoster

The Defendants' motion to dismiss first argues that all claims must be dismissed against Mr. DeCoster for failure to state a claim because, as an individual, he cannot be an "employer" for purposes of the applicable federal

statutes.[4]  *Defs.' Mot. to Dismiss* at 7-9.  The Defendants rely on *Fantini*, 557 F.3d 22, for their position that Mr. DeCoster cannot be liable under the federal employment discrimination statute cited in Counts I, II, III, IV, VII, IX, and XIII. *Defs.' Mot. to Dismiss* at 5.

The Defendants misstate the First Circuit's holding in *Fantini*.  In that case, the Court held that "there is no individual employee liability under Title VII," finding "that 'Title VII addresses the conduct of employers only and does not impose liability on co-workers."  *Fantini*, 557 F.3d at 31.  It did not, as the Defendants suggest, hold that an individual who meets the definition of "employer" for purposes of Title VII is exempt solely because he or she is an individual, not a corporate entity.  In its discussion, the *Fantini* Court cited the Sixth Circuit's holding that "an individual employee-supervisor, *who does not otherwise qualify as an 'employer,'* may not be held personally liable under Title VII."  *Fantini*, 557 F.3d at 30 (quoting *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)) (emphasis supplied).

Under Title VII, "the term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ."  42 U.S.C. § 2000e(b).  As Mr. Ramirez points out, the Act's definition of employer expressly contemplates that "a person" may fill that role, provided the other definitional requirements are met.  *Pl.'s Opp'n to Mot. to Dismiss* at 3.  The First Circuit recognizes several tests, including the so-called

---

[4]      The Defendants also argue that Mr. DeCoster cannot be liable because he was not alleged to be Mr. Ramirez's employer in the MHRC Charge, a prerequisite to bringing this suit.  *Defs.' Mot. to Dismiss* at 7-9.  This argument is addressed in section II.C.2.c, *infra*.

"integrated employer" test, to determine whether separate entities may be deemed to be parts of a single employer for purposes of Title VII and federal Family Medical Leave Act (FMLA) liability. *See, e.g., Romano v. U-Haul Int'l, et al.*, 233 F.3d 655, 666 (1st Cir. 2000) (Title VII); *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1, 4 (1st Cir. 2006) (FMLA). Under this test, the "entire relationship [of the separate entities] is to be reviewed in its totality," considering the following four factors: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) common ownership. *Engelhardt*, 472 F.3d at 4-5 (citing 29 C.F.R. § 825.104(c)) (FMLA); *see also Romano*, 233 F.3d at 666 (Title VII). Of all the factors, "control of employment decisions is a primary consideration in evaluating employer status" for purposes of Title VII, *Romano*, 233 F.3d at 666, but all four factors should be weighed equally for purposes of the FMLA. *Engelhardt*, 472 F.3d at 5.

In deciding this motion to dismiss, the Court must accept all facts in Mr. Ramirez's complaint as true and must construe all reasonable inferences in his favor. The Second Amended Complaint continually refers to Mr. Ramirez as "working for DeCoster," *Second Am. Compl.* ¶ 19, and states that he was "approached by Jack DeCoster with an offer to come to Maine and assist DeCoster in hiring Mexican workers to work at DeCoster's egg farms," *Second Am. Compl.* ¶ 20, that he "worked for DeCoster and the various entities under DeCoster's control," *Second Am. Compl.* ¶ 22, and that "DeCoster paid him a salary, and DeCoster paid for Ramirez's home, his electric service and heating oil and his health insurance."

*Second Am. Compl.* ¶ 22.   The Second Amended Complaint also states that "[d]uring his entire employment of nearly 22 years, Ramirez worked for all of the entities named as Defendants in this action, all under the ownership and control of Jack DeCoster," and that "[r]egardless of the name of the entity for whom Ramirez worked, at all times Ramirez was under the direct supervision and control of Jack DeCoster." *Second Am. Compl.* ¶¶ 24, 25.   The Complaint also alleges that "Austin J. DeCoster, as an individual, is and was, the Plaintiff's employer for all purposes . . ." and that "Jack DeCoster has direct control of labor operations, employment decisions of all of the entities listed as Defendants in this Complaint." *Second Am. Compl.* ¶¶ 61, 65.   Furthermore, the charge form Mr. Ramirez filled out and filed with the EEOC and MHRC indicates that additional employers may be named in the "Particulars" section, which Mr. Ramirez did in the first two lines. *Ex. A-1* at 1 ("I have worked for Jack DeCoster as a supervisor for his various egg companies for over twenty years.   Jack DeCoster has operated the several entities listed in this Charge as an integrated operation under his control and under the control of an umbrella entity, Maine AG, LLC").

In light of the Court's duty to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff," *Sanchez*, 590 F.3d at 41, the Court declines to dismiss Mr. DeCoster as a defendant at this time.   "The more prudent course is to allow the parties to engage in discovery and revisit the legal issue based on a more fully developed record." *OfficeMax*, 802 F. Supp. 2d at 278.   It may be that Mr. DeCoster does not qualify as Mr. Ramirez's

employer for purposes of employment discrimination liability, but, at this stage, the record is incomplete as to Mr. DeCoster's role with regard to the other named entities and any determination of his role in the alleged "integrated enterprise" depends on more information than is now before the Court. Further, because Mr. DeCoster was mentioned as the head of the integrated enterprise in the Particulars section, his argument that he must be dismissed based on improper naming in the Charge also fails.

**b.    Claims against the Co-Hen Defendants**

Next, the Defendants argue that all four of the "Co-Hen Defendants"—Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc.—no longer exist, cannot be liable to Mr. Ramirez, and should be dismissed from the suit. *Defs.' Mot. to Dismiss* at 9-10. A motion to dismiss may be granted on statute of limitations grounds, but only where "the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). Here, however, the factual allegations in the Second Amended Complaint do not establish sufficient facts on which to conclude that Mr. Ramirez is time-barred from asserting his claims against the Co-Hen Defendants. The Second Amended Complaint alleges that these entities exist, have a principal place of business in Turner, Maine, and make up part of an "integrated enterprise" run by Mr. DeCoster. *Second Am. Compl.* ¶¶ 8-11, 62, 70. The Complaint also alleges that Mr. Ramirez worked for these entities "[d]uring 2010 and before." *Second Am. Compl.* ¶ 59.

31

Because at this stage the Court takes all factual allegations in the Second Amended Complaint as true and because the Second Amended Complaint does not support dismissal of those parties on statute of limitations grounds, the Court denies the Defendants' motion to dismiss Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc.

### c. Claims Against Defendants Not Named in the EEOC and MHRC Charges

### i. Liability under Federal Law

An employee seeking to sue his or her employer in federal court for employment discrimination on the grounds of race, color, gender, or national origin must first exhaust the available administrative remedies by filing an administrative charge and obtaining a right-to-sue letter from the EEOC. *Francheschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 91, 85 (1st Cir. 2008); *see also Fantini*, 557 F.3d at 26 (citing 42 U.S.C. § 2000e-5(f)) ("Title VII requires an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination").  With "limited exceptions," failure to exhaust the administrative process "bars the courthouse door." *Francheschi*, 514 F.3d at 85 (citing *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).

Although "obligatory," the charge-filing requirement "is not jurisdictional." *Bonilla*, 194 F.3d at 278.  The requirement "is more akin to a statute of limitations" and is "subject to the usual gamut of equitable exceptions."  *Id.* at 278-79 (noting that equitable tolling may be appropriate where claimant misses deadline "because

of circumstances effectively beyond her control (such as when her employer actively misleads her, and she relies on that misconduct to her detriment")) (citing *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 185 (1st Cir. 1989); *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982)).

Here, the Defendants argue that Mr. Ramirez failed to name all but Quality Egg of New England and "DeCoster Egg Farm" as Defendants on the Charge submitted to the MHRC and, therefore, all claims against all other defendants should be dismissed for failure to state a claim. *Defs.' Mot. to Dismiss* at 10-13. However, Defendants Maine Ag, LLC, Maine Contract Farming, LLC, Dorothy Egg Farms, Inc., Dorothy Egg Farms, LLC, Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc., Radlo Bros., Inc., and Mountain Hollow Farms were all named in the cover letter from Mr. Ramirez's attorney to the MHRC transmitting the Charge. *Ex. A-2.* Mr. DeCoster was listed in the "Particulars" section of the Charge, which mentioned his "various egg companies" and "all of these listed entities," and alleged him to be the head of an "integrated operation under his control and under the control of an umbrella entity, Maine Ag, LLC." *Ex. A-1.*

The Court will not, at the motion to dismiss stage with a limited record before it, engage in an overly technical reading of the MHRC and EEOC Charges. It is sufficient that in the combined cover letter and Charge all of the Defendants were named, especially in light of the allegations that these Defendants constituted an integrated enterprise all under the common control of Mr. DeCoster. The

33

Defendants' motion to dismiss as it pertains to Defendants listed in the cover letter but not the "Employer Name" section of the Charge is denied.

### ii.     Liability under Maine Law

The Defendants rely on *Gordon v. Cummings*, 2000 ME 68, 756 A.2d 942, for the position that Mr. DeCoster, Maine Ag, LLC, Maine Contract Farming, LLC, Dorothy Egg Farms, Inc., Dorothy Egg Farms, LLC, Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc., Radlo Bros., Inc., and Mountain Hollow Farms cannot be held liable under the Maine Human Rights Act because they were not named as Mr. Ramirez's employer in the MHRC Charge, a prerequisite to bringing suit. *Defs.' Mot. to Dismiss* at 7-9. As the Defendants point out in their motion, "[b]efore a plaintiff with a MHRA claim may recover attorney fees and damages, the plaintiff must establish that she first brought a claim before the Maine Human Rights Commission." *Gordan v. Cummings*, 2000 ME 68, ¶ 11, 756 A.2d 942, 944. This requirement mirrors the charge-filing requirements of Title VII. *See* 42 U.S.C. § 2000e-5(f).

For the same reasons stated above discussing the federal charge-filing requirement, *supra* Part II.C.2.c.1., the Court declines to dismiss Defendants Mr. DeCoster, Maine Ag, LLC, Maine Contract Farming, LLC, Dorothy Egg Farms, Inc., Dorothy Egg Farms, LLC, Co-Hen Egg Farms, LLC, Co-Hen Egg Farms, Inc., Co-Hen Egg Hatchery Corp., and Co-Hen Hatchery, Inc., Radlo Bros., Inc., and Mountain Hollow Farms.

### d.   Workers' Compensation Act Exclusivity Provision

Fourth, the Defendants argue that Counts IX, X, XI, XII, and XII and all damages claims regarding lost wages, lost fringe benefits, and personal injuries must be dismissed under the Maine Workers' Compensation Act's exclusivity, immunity, and exemption provisions because, as an employer who secured workers' compensation insurance for its employees, Maine Ag, LLC is immune from private civil suit for injuries alleged to have occurred in the workplace.  *Defs.' Mot. to Dismiss* at 13-18.  This claim is, in the Court's view, frivolous and contrary to well-settled law.   Simply put, there is no carve-out from state and federal anti-discrimination laws for work-injured employees.

The exclusivity provision of the Maine Workers' Compensation Act provides:

> An employer who has secured the payment of compensation in conformity with section 401 and 407 is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18-A, section 2-804, involving personal injuries sustained by an employee arising out of and in the course of employment . . . .

39-A M.R.S. § 104.  Count IX alleges a violation of the Americans with Disabilities Act; Count X a violation of the Maine Human Rights Act; Count XI the anti-retaliation provisions of the Maine Human Rights Act; Count XII the Maine Family Medical Leave Act; and Count XIII the Federal Family Medical Leave Act.  *Second Am. Compl.* at 23-29.  Causes of action pursuant to these federal and state statutes are not brought under the common law.  They are not brought under 39-A M.R.S. sections 901-08, Maine's Employer's Liability Law.   *See Bond Builders v. Commercial Union Ins. Co.*, 670 A.2d 1388, 1390 (Me. 1996) ("[t]he Employer's

Liability Law, now 39-A M.R.S. §§ 901-09 (1995) . . . does not create an independent statutory cause of action for employment related injuries"). They are not brought under 14 M.R.S. sections 8101 through 8118, which is the Maine Tort Claims Act. They are not brought under 18-A M.R.S. section 2-804, which encompasses actions for wrongful death. Thus, as the Maine Supreme Judicial Court has plainly held, "[t]he exclusivity provisions of the Maine Workers' Compensation Act do not apply to bar [an employee's] claim for employment discrimination." *Bond Builders*, 670 A.2d at 1390.

The Defendants cite *Knox v. Combined Insurance Company of America*, 542 A.2d 363 (Me. 1988), for the proposition that the Law Court "specifically held that common law tort claims resulting from sexual harassment are covered by the exclusivity provision of Maine's Workers' Compensation Act." *Defs.' Mot. to Dismiss* at 16 (citing *Knox*, 542 A.2d at 365-66). But as the Defendants must know, Ms. Knox's lawsuit was "based on various common law theories of recovery." *Knox*, 542 A.2d at 364. In *Knox*, the Law Court merely held that common law causes of action for sexual assault are barred by the exclusivity provisions of the Maine Workers' Compensation Act, which bar common law causes of action against employers who secure the payment of compensation. *Id.* at 365-67. The Defendants take nothing from their citation of other court decisions that stand for the unremarkable proposition that the exclusivity provisions of the Maine Workers' Compensation Act bar lawsuits based on the common law by employees against employers who have secured the payment of workers' compensation. *Defs.' Mot. to Dismiss* at 16-17. The

36

notion that an employer would be free to discriminate against an employee on the basis of his race or age, for example, because the employee had sustained a work-related injury is unsettling and the Court rejects the Defendants' motion to dismiss on these questionable grounds.

### e.   Failure to State a Claim on Disability Discrimination, Retaliation, and FMLA Counts

Here, the Defendants argue that Counts IX, X, XI, XII, and XIII must also be dismissed for failure to state a claim because Mr. Ramirez has never formally requested specific reasonable accommodation nor medical leave as required under the applicable state and federal medical leave acts. *Defs.' Mot. to Dismiss* at 13-18. The Second Amended Complaint, however, alleges that Mr. Ramirez notified his employer of a work-related mental stress injury and sent a letter to Mr. DeCoster asking for accommodation under the FMLA, ADA, and MHRA. *Second Am. Compl.* ¶¶ 55-56; *Defs.' Mot. to Dismiss* Ex. E-1.

Taking the factual allegations of the complaint as true, and considering the letter attached to this motion as Exhibit E-1, the Court finds that Mr. Ramirez has not failed to state a claim upon which relief could be granted with respect to his disability discrimination, retaliation, and FMLA counts. The Defendants' motion to dismiss on those grounds is denied.

## III.   CONCLUSION

The Court GRANTS the Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 31), GRANTS the Plaintiff's Motion for Leave to File Amended Caption (ECF No. 33), DISMISSES without prejudice Defendant Radlo Brothers,

Inc.'s Motion to Dismiss (ECF No. 29), GRANTS IN PART and DENIES IN PART

the Plaintiff's Motion to Strike Exhibits (ECF No. 27), and DENIES Defendants'

Partial Motion to Dismiss (ECF No. 21).

       SO ORDERED.


                   /s/ John A. Woodcock, Jr.
                   JOHN A. WOODCOCK, JR.
                   CHIEF UNITED STATES DISTRICT JUDGE

Dated this 21st day of June, 2012